United States District Court
Eastern District of New York     2:17-cv-06728

Josh Berger, individually and on behalf
of all others similarly situated,

          Plaintiff,

- against -     Complaint

MFI Holding Corporation, MFI International, Inc., Michael Foods of Delaware, Inc., Michael Foods Group, Inc., Michael Foods, Inc., Crystal Farms Refrigerated Distribution Company, Post Holdings, Inc.,

          Defendants

      Plaintiff Josh Berger ("plaintiff") individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

      1.    MFI Holding Corporation, MFI International, Inc., Michael Foods of Delaware, Inc., Michael Foods Group, Inc., Michael Foods, Inc., and Crystal Farms Refrigerated Distribution Company, are wholly-owned subsidiaries of Post Holdings, Inc. ("Post") (collectively, "Defendants"), and manufacture, distribute and advertise the Simply Potatoes brand of refrigerated potato products.

      2.    The Products are sold by third-parties through brick and mortar stores and the internet.

      3.    Simply Potatoes has three product lines, indicated in the table below as Hash Browns, Mashed Potatoes and Diced Potatoes.

1

| Diced Potatoes | Mashed Potatoes | Hash Browns |
|---|---|---|
|  |  |  |

4. The relevant product line to this action are the Simply Potatoes Mashed Potatoes, of which there are seven varieties.

5. Five of these are "Regular," as denoted by the "Simply Potatoes" name above the product description and include Traditional, Garlic, Sour Cream & Chive, Sweet and Parmesan Peppercorn.[1]

6. Two of these are denoted by the "Simply Skinny" name above the product description and include Sea Salt & Cracked Pepper and Roasted Garlic & Sea Salt.

7. The representations capitalize on increasing consumer preferences for foods which contain fewer and simpler ingredients.

8. For instance, a consumer will be more likely to purchase a product which is comprised of ingredients "they can pronounce" or would find in "their grandmother's kitchen."

---

[1] For purposes of this complaint, the five regular varieties will be referred to as the "Simply Potatoes" products while the other two varieties will be referred to as the "Simply Skinny" products. "Products" shall refer to the "Simply Potatoes" and "Simply Skinny" products.

2

9. Consumers are seeking such products because they are generally healthier and less processed than their synthesized and additive-laden alternatives.

10. Where a product is composed of fewer, simpler ingredients, the final consumable product will be less processed and contain fewer artificial and synthetic ingredients and preservatives that consumers seek to avoid.

11. These preferences are illustrated through butter and margarine.

12. Butter is one of nature's oldest and simplest foods, produced by churning the cream at the top of a cow's milk until the fat solidifies.

13. Margarine, on the other hand, was conceived in a lab as a butter alternative and remains butter's archrival to this day.

14. The invention of margarine in the late 19th century at the urging of the French government was to offset the deficiency in fat consumption in lower-income people.

15. Margarine's production is the result of putting oil through a complex and scientific process called hydrogenation, whereby the oil solidifies into the final product.

16. Butter shortages on the homefront during World War II gave way to the post-war preeminence of margarine, due to its marketing as a healthier and cheaper butter alternative.

17. In the past decade, butter has experienced a renaissance at the direct expense of margarine.

18. The reasons include public awareness of harmful trans fats and hydrogenated vegetable oils associated with margarine, consumer acceptance of more fat in their diets and the above-mentioned desire to consume foods which are simple, real and natural.

19. Butter is central to the marketing of the Simply Potatoes Products.

20. The front label contains an image of mashed potatoes accompanied by ingredients which distinguish that variety (i.e., pieces of whole garlic in the Garlic Mashed Potatoes), around a square slice of semi-melted butter.

Principal Display Panel



21. Approximately an inch to the right of the melting butter square is a circle which emphasizes "Made With Real Butter & Milk."



4

22. This vintage-styled stamp with unevenly darkened double circles surrounding a stencil font message harkens back to an era when butter was made on a small scale, ink was scarce and typography offered limited choices.

23. The stamp is impressed at an angle, making it appear as if it were manually applied following hours of arduous butter churning.

Old-fashioned Butter Churning



24. The two sides of the package state "We use fresh, never frozen real potatoes and real ingredients like milk and butter. Finally, comfort food that you can feel comfortable with."

25. However, the Simply Potatoes Products are misleading because despite the centrality of butter to its marketing and labeling, it also contains margarine as indicated on the ingredient list.

Information Panel                                        Ingredient List



      26.      No reasonable consumer would seek and purchase a product which touts the presence of "Real Butter" if it were disclosed on the front label that the product also contained margarine.

      27.      No reasonable consumer who purchases a product highlighting the presence of real butter and milk expects that the product will also contain margarine.

      28.      This is because reasonable consumers are seeking to consume butter instead

of margarine, certainly not both in the same product.

29. The "Made With Real Butter & Milk" stamp contributes to the perception not that the butter was made in a creamery by someone attired as an American colonist, but that where a product wears its butter bona fides on its sleeve, it will not also contain margarine.

30. The common dinner table question upon digging into mashed potatoes is whether one will choose butter or margarine, not if someone will apply a little of each.

31. The information panel states that "Potatoes are one of nature's simplest, most satisfying foods. We like to keep it that way, using only real, fresh, never frozen potatoes. So Simply Potatoes are as deliciously easy as they are wholesome. Enjoy!," while the front label states "Made From Fresh Potatoes" in an arc at the top of the label, above several uncooked potatoes.

32. The above-quoted representations are misleading because while potatoes may in fact be "one of nature's simplest, most satisfying foods," defendants do not "keep it that way" despite the claims they use "only real, fresh, never frozen potatoes."

33. This is because the Products admittedly contain margarine, a highly synthesized and decidedly unsimple creation.

34. Moreover, the margarine contained in the Products is made using genetic engineering, commonly referred to as genetically modified organisms, or GMOs.

35. The label claims stress the simplicity of potatoes, butter and milk, joined together in the Simply Potatoes Products.

36. The above misrepresentations are material to reasonable consumers.

37. Excluding tax, the products cost approximately between $2.99 and $4.99, a premium price compared to other similar refrigerated potato products.

## Jurisdiction and Venue

38. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

39. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

40. This Court has personal jurisdiction over defendants because they conduct and transact business, contract to supply and supply goods within New York.

41. Venue is proper because plaintiff and many class members reside in this District and defendants have been doing business in this District and in New York.

42. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

43. Plaintiff is a citizen of Nassau County, New York.

44. Post Holdings, Inc. ("Post"), a consumer-packaged goods holding company, is a Missouri corporation with its principal place of business in St. Louis, Missouri.

45. MFI Holding Corporation ("MFI Holding") is a Delaware corporation and a wholly-owned subsidiary of Post.

46. Crystal Farms Refrigerated Distribution Company ("Crystal Farms"), MFI International, Inc. ("MFI International"), Michael Foods Group, Inc. ("Michael Foods Group"), Michael Foods, Inc. ("Michael Foods"), and Michael Foods of Delaware, Inc. ("Michael Foods Delaware") comprise the "Michael Foods Group" within Post and are wholly-owned subsidiaries of MFI, with their principal place of business in Minnetonka, Minnesota.[2]

---

[2] MFI International and Crystal Farms are Minnesota corporations while the other Michaels Food Group entities are Delaware corporations.

47. The Michael Foods Group companies produce value-added egg products, refrigerated potato products, cheese and other dairy case products and pasta products for the foodservice, retail and food ingredient channels.

48. Post directs and controls the operations, production, marketing and labeling of the Products manufactured and distributed by its wholly-owned subsidiaries.

49. In 2017, plaintiff purchased a Simply Potatoes product for no less than $3.99, excluding tax, at a store within this District.

50. Plaintiff paid a premium relative to other similar products because prior to purchase, he saw and relied upon the representations described herein and understood same to mean the Products were simple, made from fresh potatoes and that the presence of real butter and milk meant that the Product did not contain margarine as well.

51. Plaintiff purchased the Product because he intended to consume a product which possessed the attributes and features described herein and opted against buying a less expensive product not so represented.

## Class Allegations

52. The class is all consumers in all states who purchased any Products bearing any of the actionable representations herein during the statutes of limitation periods.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54. The class is so numerous that joinder of all members, even if permitted, is impracticable, as plaintiff believes there are hundreds of thousands of members.

55. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class

members are entitled to damages.

56. Plaintiff's claims and the basis for relief are typical to other members' owing to all being subjected to the same representations.

57. Plaintiff is an adequate representative because his interests do not conflict with other class members.

58. No individual inquiry is necessary since the focus is only on defendants' practices and the class is definable and ascertainable.

59. Individual actions risk inconsistent results, would be repetitive and are impractical to justify, as the claims are modest.

60. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

61. Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

## Violation of New York General Business Law § 349

62. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

63. Defendants' acts and practices are not unique to the parties and have a broader impact on the public.

64. Defendants' representations of the Products as being "Made with REAL Butter & Milk," "simple," "nutritious" and "wholesome" are false and misleading.

65. This is because no reasonable consumer would expect a product touting the presence of "real butter" to contain that specific product which is essentially the opposite

product of butter – margarine.

66. It is false and misleading to represent the Products as (1) "simple" when they contain margarine, an artificial product in its own right, that is also made from GMOs and (2) "nutritious" and "wholesome" due to the levels of nutrients, sodium, fat content and calories in the Products.

67. The representations and omissions were material and relied on by plaintiff and class members, who paid more than they would have without getting all they bargained.

68. As a result, plaintiff and class members are entitled to damages.

## Violation of New York General Business Law § 350

69. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

70. Defendants' advertising is not unique to the parties and affects the public.

71. Defendants' representations of the Products as being "Made with REAL Butter & Milk," "made from Fresh Potatoes," "simple," "nutritious" and "wholesome" are misleading because a reasonable consumer expects that a product which focuses its labeling on the presence of butter will not contain margarine.

72. Defendants mislead consumers by boasting of the presence of butter despite also containing margarine.

73. Defendant's false advertising was relied upon by plaintiff and class members, who paid a premium for the Products greater than they otherwise would have and did not receive all that they bargained for.

74. As a result, plaintiff and class members are entitled to damages.

## Fraud

75. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. Defendants' statements that the products are simple, wholesome and nutritious were false because the Product contains margarine, is made through the use of GMOs and contains levels of sodium, fat and calories that are not conducive to a nutritious diet or wholesome lifestyle.

77. Defendants intended for consumers to rely on its claims that the Products were simple, nutritious and wholesome by affording these claims prominence of place.

78. These representations were material because plaintiff and class members intended to purchase Products which had the above-described qualities.

79. Plaintiff and class members relied upon these claims, sustaining injury through paying more than they would have absent such claims, entitling them to damages.

<u>Implied Warranty of Merchantability</u>

80. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81. Defendants manufacture, distribute and sell refrigerated potato products, and warranted to plaintiff and class members that the Products were "Made with Real Butter & Milk" even though they contained the food product which Plaintiff and other class members sought to avoid – margarine.

82. The Products do not conform to the affirmations of fact and promises on the Products and the accompanying literature, wholly due to defendants' actions.

83. As a result of breaching the implied warranty of merchantability, plaintiff and class members were damaged in the amount paid for the Products.

Unjust Enrichment

84. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85. Defendants obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action and certifying plaintiff as class representative;
2. Entering preliminary and permanent injunctive relief and directing defendant to correct their practices to comply with the law;
3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law claims and GBL §§ 349, 350;
4. Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and
5. Such other and further relief as the Court deems just and proper.

Dated: November 15, 2017

Respectfully submitted,

Levin-Epstein & Associates, P.C.

By: /s/ Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

Fax: (212) 563-7108
joshua@levinepstein.com

Sheehan & Associates, P.C.

By: /s/ Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

2:17-cv-06728
United States District Court
Eastern District of New York

Josh Berger, individually on behalf of himself and all others similarly situated,

        Plaintiff,

- against -

MFI Holding Corporation, MFI International, Inc., Michael Foods of Delaware, Inc., Michael Foods Group, Inc., Michael Foods, Inc., Crystal Farms Refrigerated Distribution Company, Post Holdings, Inc., LLC,

        Defendants

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 15, 2017
       New York, New York

                                /s/ Joshua Levin-Epstein
                                Joshua Levin-Epstein