United States District Court
Eastern District of New York                                  2:17-cv-06728 (JFB) (ARL)

Josh Berger, individually and on behalf
of all others similarly situated,

                        Plaintiff

            - against -                                             First Amended Complaint

MFI Holding Corporation, MFI International,
Inc., Michael Foods of Delaware, Inc., Michael
Foods Group, Inc., Michael Foods, Inc.,
Crystal Farms Refrigerated Distribution
Company, Post Holdings, Inc.,

                        Defendants

      Plaintiff Josh Berger ("plaintiff") individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

      1.    Michael Foods, Inc. ("defendant") manufactures and sells refrigerated mashed potato products under the "Simply Potatoes" brand (the "Products").

      2.    The Products are available in no fewer than the following varieties:

- Traditional Mashed Potatoes
- Garlic Mashed Potatoes
- Sweet Mashed Potatoes
- Sour Cream & Chive Mashed Potatoes
- Parmesan Peppercorn Mashed Potatoes

      3.    The Products are sold to consumers by third-parties from brick-and-mortar stores and online, and available in 24 and 32-ounce packages.

      4.    The representations are identical across the Products, except for those elements which depict the specific variety (i.e., garlic).

      5.    The front label highlights the presence of butter, through a golden, melting

1

square slice and a vintage-style "Made With Real Butter & Milk" stamp.

 

      6.      The information panel (back label) states "Potatoes are one of nature's simplest, most satisfying foods. We like to keep it that way, using only real, fresh, never frozen potatoes. So Simply Potatoes are as deliciously easy as they are wholesome."



7. The dual side flaps declare "We use fresh, never frozen real potatoes and real ingredients like milk and butter. Finally, comfort food that you can feel comfortable with."



8. The front and back labels declare "Made From Fresh Potatoes."



9. The label claims are centered around increased consumer demand for healthier and less processed foods with fewer artificial ingredients.

10. Considering uncertainty regarding the meaning and use of "natural" on food labels, "Simply" and "simple" are intended as cues, signaling consumers that the Products have fewer, less artificial and synthetic ingredients and retain the integrity of the original ingredients due to not being overly processed

11. Consumers understand "simple" consistent with its ordinary dictionary meaning: to describe something "easily understood or done" or composed of a single element, and not compound.

12. Butter is the quintessential natural and simple food, produced by churning the cream at the top of a cow's milk until the fat solidifies.

13. In response to a butter shortage in the late 19th century, margarine was invented at the behest of the French government as a lower quality butter alternative.

14. Margarine is made through converting vegetable oils from liquid to solid through hydrogenation, fractionation and interesterification, in the presence of chemical and enzymatic catalysts.

15. After World War II, per capita margarine consumption surpassed butter and reached its peak in the mid-1970s at 12 pounds per person, three times that of butter.

16. Today, consumption of butter exceeds margarine due to several factors:

- recent studies have challenged the notion that consuming saturated fat is tied to greater risks of heart disease;

- scientific discovery that the hydrogenation process for making margarine created trans fats, which were determined to have harmful health consequences; and

- recognition that fat content is not as responsible for health issues as other food components, such as sugar.

17. Consumers prefer butter to margarine in general and in potatoes because they:

- value butter's unique taste, owing to more than 120 naturally occurring flavor compounds including methyl ketones and lactones;

- are familiar with its ability to enhance the texture and other qualities of (mashed) potato products; and

- prefer the mouthfeel of butter since it melts at a normal body temperature, while margarine has a higher melting point, resulting in a greasy aftertaste on the palate.

18. The naturally dry texture of potatoes means they are made and/or prepared with fats and oils like butter or margarine to enhance their texture, viscosity, palatability and to provide lubrication in the mouth.

19. This leads to the common dinner table question before digging into mashed potatoes – to choose butter or margarine.

4

20. The labels are misleading because despite the centrality of butter to their marketing and labeling, they also contain margarine, as indicated below.

Information Panel　　　　　　　　　　　　　　Ingredient List



21. Consumers who purchase a product which wears its butter bona fides on its sleeves reasonably expect the presence of butter will mean the exclusion of margarine.

22. This is because despite functionally similar usages, butter and margarine are seen by consumers as being part of different food categories.

23. Butter occupies the natural, simple and minimally processed category, while margarine is the epitome of an artificial and processed food consumers are trying to avoid.

24. This distinction is evident from their sub-ingredients in the Products.

<u>Butter</u>　　　　　　　　　　　　　　<u>Margarine</u>

- Cream
- Salt

- Liquid and Hydrogenated Soybean Oil
- Water
- Salt
- Contains Less than 2% of
  - Whey Solids
  - Vegetable Mono & Diglycerides

5

- Soy Lecithin
- Sodium Benzoate
- Artificial Flavor
- Vitamin A Palmitate Added

25. To the extent reasonable consumers consume butter *and* margarine, this would only be done in separate foods (i.e., butter for baking muffins, margarine for preparing vegetables), instead of using a bit of each within the same food.

26. This is no different from how almost all consumers would prefer to watch one entire movie than half of two movies, or drink iced coffee instead of hot coffee on a summer day – variety is not always preferred.

27. This fact is borne out by looking at mashed potato recipes of average people.

28. Allrecipes.com is the country's most-visited recipe site, according to the Alexa.com, the premier commercial internet traffic data and analytics firm, and eBizMBA.com, which combines data from Alexa with other similar services such as Compete and Quantcase.[1]

29. Allrecipes.com has the most user-contributed recipes and is the most influential site in its category, as measured by time spent there and links from other sites.

30. A search of available data indicates that when people prepare mashed potatoes, they will use butter or margarine, as opposed to both.

31. This is shown and can be replicated by visiting google.com and entering the two combinations of Search Terms 1 and 2 followed by "site:allrecipes.com/recipe," as shown below.[2]

---

[1] www.alexa.com/topsites/category/Home/Cooking/Recipe_Collections and www.ebizmba.com/articles/recipe-websites, accessed January 23, 2018.
[2] Accessed January 23, 2018.

| Subdomain URL | Search Term 1 | Search Term 2 | Results |
|---|---|---|---|
| site:allrecipes.com/recipe | "mashed potatoes" | "butter or margarine" | 171 |
|  |  | "butter and margarine" | 0 |

32. When "mashed potatoes" is combined with "butter or margarine," Allrecipes.com retrieves 171 distinct, user-generated recipes which include "mashed potatoes" in the name (i.e., Whipped Mashed Potatoes, Rosemary Mashed Potatoes, etc.).

33. In contrast, where "mashed potatoes" is combined with "butter and margarine," Allrecipes.com is unable to locate a single entry.

34. This illustrates that when consumers have mashed potatoes either at home, at a restaurant or buying them already prepared at a store, they will seek a version which has butter or margarine, but never both.

35. There is no expectation by a reasonable consumer that mashed potatoes would be consumed with butter *and* margarine – the front label declaration of butter is the de facto exclusion of margarine.

36. "Fresh" is one of the most valued descriptive food terms to consumers and its application differs depending on the product type and expectations.

37. For mashed potatoes, a reasonable consumer understands "fresh" to mean they were "just prepared."

38. This is because mashed potatoes do not spring from the earth – there must be human and mechanical intervention to convert a whole potato to the mashed form.

39. Defendant relies heavily on the term "fresh" – "Made from Fresh Potatoes" and made using "fresh, never frozen real potatoes" – though it never actually claims the Products *are* "fresh."

7

40. Defendant does not make such a claim because to do so would be egregious – after all, the Products are highly processed and contain numerous chemical preservatives.

41. Instead, defendant relies on the fact that "83% of consumers believe refrigerated potatoes are fresh."

42. This figure is promoted on the second page of defendant's 2014 digital brochure prepared for the food service/restaurant industry, relying on Datassential survey data from February 2014.

43. Defendant urges the industry to purchase its mashed potato products because consumers have the mistaken belief they are fresh, even though the very next page admits the shelf-life is 50 days.

44. By using the word "fresh" in such a way, coupled with consumer misperception and defendant's knowledge of those mistaken beliefs, reasonable consumers conclude the final product is fresh, or just prepared.

45. Mass marketed refrigerated potato products such as Simply Potatoes cannot be fresh because fresh mashed potatoes have a shelf-life between 7 and 10 days.

46. The Products' shelf life of at least 50 days (up to 90) is due to the addition of chemical preservatives – sodium bisulfite, potassium sorbate and disodium pyrophosphate

47. These preservatives change the essential nature of an uncomplicated food – basic mashed potatoes (what consumers want) – to an artificial product they would avoid if they knew the truth.

48. Sodium bisulfite, a compound, artificial preservative, is used to slow the non-enzymatic browning of the Products and is made by reacting sulfur dioxide gas, $SO_2$, in a solution containing sodium hydroxide, $NaOH$, or sodium carbonate, $Na_2CO_3$.

8

49. Potassium sorbate, which inhibits microbial growth, is made through adding potassium carbonate to a solution of sorbic acid in a solvent of acetone, heating the mixture to reflux temperature and recovering potassium sorbate from the reaction mixture.

50. Disodium pyrophosphate prevents and reverses naturally occurring discoloration, or "after-cooking darkening, and is made through treating phosphoric acid with a sodium compound.

51. A reasonable consumer expects where a product is named "Simply Potatoes," emphasizes its "simplicity," and prominently claims the presence of "Real Butter & Milk," that product will only contain potatoes, butter, milk and those variations in the Product line (i.e., garlic, sour cream).

52. Such an expectation is consistent with the how consumers understand the word "simply," which is "merely" or "just," as in "just potatoes."

53. In addition to the artificial preservatives which belie the Products' claim to simplicity, the margarine is made from genetically modified organisms (GMOs).

54. Monsanto, the largest global producer of genetically modified seeds has described GMOs as "Plants or animals that have had their genetic makeup altered," whereby "genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."

55. The Environmental Protection Agency ("EPA") has distinguished conventional breeding, occurring through cross-pollination, from genetic engineering using modern scientific techniques.

> For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, e.g., sweeter fruit. Then, out of the offspring, the breeder would choose the offspring plant that

9

produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.

Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticide [] (e.g., the insecticidal protein Bt from the bacterium, Bacillus thuringiensis) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.

56. Conventional breeding entails sexual and asexual reproduction to develop new plant varieties through selection, and only seeks to achieve expression of genetic material already present within a species

57. Genetic engineering requires insertion of unrelated genetic material, followed up by selection of the varieties.

58. The "Made with Real Butter & Milk" claims are complemented by the surrounding representations including "Simply Potatoes," "simple," "fresh" and "one of nature's simplest" foods, etc.

59. These claims are effective because butter and milk are the embodiment of "simple foods" – made through natural processes and generally retain most attributes even after a consumer purchases them at a store.

60. This means that where a consumer sees an emphasis on butter and milk, they will be more likely to accept that the Products are "simple" and "fresh."

61. Excluding tax, the products cost approximately between $2.99 and 5.99, a premium price compared to other similar refrigerated mashed potato products.

Jurisdiction and Venue

62. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

10

63. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

64. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

65. Venue is proper because plaintiff and many class members reside in this District and defendant has been doing business in this District and in New York.

66. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

67. The class is all consumers in all states who purchased any Products bearing any of the actionable representations herein during the statutes of limitation periods.

68. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

69. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

70. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

71. Plaintiff's claims and the basis for relief are typical to other members', owing to all being subjected to the same representations.

72. Plaintiff is an adequate representative because his interests do not conflict with other members.

73. No individual inquiry is necessary since the focus is only on defendant's

practices and the class is definable and ascertainable.

74. Individual actions risk inconsistent results, would be repetitive and are impractical to justify, as the claims are modest.

75. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

76. Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

## Parties

77. Plaintiff is a citizen of Nassau County, New York.

78. Michael Foods, Inc. ("Michael Foods") is a Delaware corporation with a principal place of business in Minnetonka, Minnesota.

79. Plaintiff paid a premium relative to similar products because prior to purchase, he (i) saw and relied on the front label claim that the Products were "Made With Real Butter & Milk," (ii) never observed anyone eating mashed potatoes with butter or margarine on any occasion where mashed potatoes were served, (iii) only observed people choosing butter or margarine to use on their mashed potatoes and (iv) preferred to consume butter over margarine because it is a natural product with minimal processing and no chemicals.

80. Plaintiff believed the Products were fresh because he was unaware that mashed potatoes could be refrigerated and yet have a shelf-life of up to three months.

81. Plaintiff desired to purchase a product that was free from chemical preservatives and GMOs and believed that because the Products were named "Simply

12

Potatoes" and the front label emphasized "Real Butter & Milk," it would not have such components since that would be incompatible with a "simple" dish.

82. In the second half of 2017, plaintiff purchased a Simply Potatoes Garlic Mashed Potatoes, 24 ounces, for no less than $3.99, excluding tax, at a store within this District, a premium price relative to similar products.

<u>Violations of New York General Business Law §§ 349 & 350</u>

83. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

84. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

85. The representations – "Made with Real Butter & Milk," "Simply," "simple," "simplest" and "Fresh" are false and misleading for the reasons described herein.

86. No reasonable consumer would expect a product touting the presence of "real butter" to contain the one product which is essentially its opposite – margarine.

87. It is false and misleading to represent the Products as "simple" when they contain margarine, an artificial product in its own right, that is also made from GMOs.

88. Defendant makes partial, voluntary disclosures and fails to state additional or qualifying matter with respect to what they did say, which is misleading.

89. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have without getting all they bargained for.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

90. Plaintiff repeats and realleges all allegations in foregoing paragraphs.

91. Defendant manufactures and sells refrigerated mashed potato products.

92. Defendant warranted to plaintiff and class members that the Products did not

contain margarine as a result of the prominent "Made with Real Butter & Milk" claim.

93. Because it is not conceivable for mashed potatoes to contain butter and margarine, no reasonable consumer would expect the Products to contain margarine, since the front label prominently promotes the presence of butter.

94. The Products do not conform to their affirmations of fact and promises, wholly due to defendant's actions.

95. As a result, the Products lacked those attributes which are present in mashed potato products which only contain butter.

96. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

## Fraud

97. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98. Defendant described the Products as being "made with" and "made from" "fresh potatoes."

99. Defendant knew that 83% of consumers had the mistaken belief that refrigerated mashed potatoes were fresh.

100. The only legitimate purpose of including the claims that the Products are "Made From" fresh potatoes was to reinforce this erroneous consumer belief.

101. By itself, describe a food as being "Made From" an ingredient that was fresh *at one particular point* – is meaningless.

102. This is because all food was fresh at some previous time in the past, either after it was harvested or following its conversion into an edible food.

14

103. Defendant's intent in making the "Made From"/"made with" "fresh potatoes" claims was to skirt a patently and obviously false claim, by relying on proprietary survey data and take advantage of consumer's mistaken beliefs.

104. Plaintiff and class members were part of the over 90% of consumers who value and pay more for a fresh product and part of the 83% of consumers who believed refrigerated mashed potato products were fresh, as in "just prepared" or prepared within a time period which would not have required the use of chemical preservatives to extend their shelf-life to up to three months.

105. Plaintiff and class members observed defendant's front label claim that the Products were "Made From Fresh Potatoes" and thereby believed the Products themselves were fresh.

106. Plaintiff and class members paid more than they would have for the Products because of this mistaken belief, entitling them to damages.

## Unjust Enrichment

107. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

108. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct its practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL §§ 349, 350 claims;

4. Awarding costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: February 3, 2018

        Respectfully submitted,

        Levin-Epstein & Associates, P.C.

        /s/Joshua Levin-Epstein
        Joshua Levin-Epstein
        1 Penn Plaza, Suite 2527
        New York, NY 10119
        Tel: (212) 792-0046
        Fax: (212) 563-7108
        joshua@levinepstein.com

2:17-cv-06728 (JFB) (ARL)
United States District Court
Eastern District of New York

---

Josh Berger, individually on behalf of himself and all others similarly situated,

        Plaintiff,

  - against -

MFI Holding Corporation, MFI International, Inc., Michael Foods of Delaware, Inc., Michael Foods Group, Inc., Michael Foods, Inc., Crystal Farms Refrigerated Distribution Company, Post Holdings, Inc., LLC,

        Defendants

---

## First Amended Complaint

---

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

---

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 3, 2018

                                              /s/ Joshua Levin-Epstein
                                              Joshua Levin-Epstein