FILED
CLERK

4/3/2019 4:49 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

----------------------------X  Docket#
BERGER,                      :  17-CV-06728-JFB-ARL
               Plaintiff,    :
                             :
     - versus -             :  U.S. Courthouse
                             :  Central Islip, New York
                             :
MFI HOLDING CORPORATION,     :
          et al.,           :  March 28, 2019
             Defendants     :  10:36 AM
----------------------------X

     TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
          BEFORE THE HONORABLE JOSEPH F. BIANCO
               UNITED STATES DISTRICT JUDGE

A    P    P    E    A    R    A    N    C    E    S:
```

**For the Plaintiff:**        **Spencer Sheehan, Esq.**
Sheehan & Associates, P.C.
505 Northern Boulevard
Suite 311
Great Neck, NY 11021

**For the Defendant:**        **August T. Horvath, Esq.**
Foley Hoag LLP
1301 Avenue of the Americas
New York, NY 10019

**Transcription Service:**    **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 17-CV-6728, Berger v.

2    MFI Holding Corporation.

3          Please state your appearance for the record.

4          MR. SHEEHAN:  For the plaintiff, Spencer

5    Sheehan, Sheehan & Associates, P.C., 505 Northern

6    Boulevard, Suite 311, Great Neck, New York 11021.

7          MR. HORVATH:  For defendants, August Horvath

8    from the firm of Foley Hoag, 1301 Sixth Avenue, New York

9    City.

10          THE COURT:  All right.  Good afternoon,

11    counsel.

12          As you know, I scheduled this because I wanted

13    to place a ruling on the record with respect to the

14    pending motion to dismiss and I apologize for having to

15    reschedule for today but I decided given how long the

16    motion has been pending to, rather than utilize decision,

17    just place a detailed oral ruling on the record.  If you

18    want to order a copy of the transcript of this ruling,

19    you can do so through the clerk's office, and obviously

20    if there are any questions about the ruling, I will

21    answer them when I am done.  It should take about 15

22    minutes or so to place it on the record.

23          So for reasons I am going to state in detail in

24    a moment, I am granting in part and denying in part, the

25    motion to dismiss.  Specifically, I am granting the

3

Proceedings

1   motion with respect to the implied warranty of

2   merchantability claim and the unjust enrichment claim.

3   I'm denying the motion with respect to the New York

4   General Business Law Sections 349 and 50, the express

5   warranty claim and the common law fraud claim.  I'm also

6   denying the request to strike placing plaintiffs'

7   nationwide class allegations as to the remaining claims

8   and I separately conclude that the plaintiff does not

9   have standing to seek injunctive relief in this

10  particular case.

11          With respect to the standard the Court is

12  applying, obviously it's well-settled and incorporated by

13  reference rather than repeating it in any great detail, I

14  incorporate from my prior written opinions including

15  Schiff v. Stevens, 2017 WL 65432 (E.D.N.Y. January 6th,

16  2017) and Litras v. PVM International Corporation, 2013

17  WL 4118482 (E.D.N.Y. August 15, 2013).

18          Obviously, the Court is accepting the factual

19  allegations in the complaint as true, drawing all

20  reasonable inferences in the plaintiff's favor and then

21  determining whether a plausible claim exists under the

22  Iqbal-Twombly standard.

23          The Court's obviously -- excuse me -- the

24  parties are familiar with the facts of the case.  I am

25  just going to briefly describe some of the relevant

4

Proceedings

1   background allegations from the first amended complaint,

2   which again the Court is assuming to be true for purposes

3   of deciding the motion.

4         It's alleged that defendant Michael Foods, Inc.

5   manufactures and sells refrigerated mashed potatoes

6   products, branded as Simply Potatoes in retail outlets

7   and online.  That's paragraphs 1 and 3.

8         The packaging to which plaintiff objects

9   contains phrases, among others, "made with real butter

10  and milk".  That's paragraph 5.  And variants of the

11  claim that the product is "made with fresh potatoes".

12  That's paragraphs 6, 7, and 8.

13        According to the ingredient list, defendants'

14  product contains both butter and margarine.  That's

15  paragraph 20.  Margarine is listed twice on the

16  packaging, once in bold.  The parties agree that the

17  potatoes used to make the Simply Potatoes products are

18  fresh as defined by FDA regulations, in that they are in

19  a raw state and have been frozen or subject -- have not

20  been frozen or subjected to any form of thermal

21  processing or any other form of preservation.  That's 21

22  USC Section 101.95.

23        The complaint alleges that there are varying

24  claims on the packaging, including the words "simply",

25  "simple", and "simplest".

5

Proceedings

1          It further alleges that the products are sold

2     for between $2.99 and $5.99 per unit, which the plaintiff

3     alleges to be a premium price, compared to other

4     refrigerated mashed potato products.  That's paragraph

5     61.

6          The complaint alleges in paragraphs 104 and

7     105, that plaintiff believed the refrigerated mashed

8     potatoes product were fresh as in just prepared or

9     prepared within a time period which have not required the

10    use of chemical preservatives to extend their shelf life

11    up to three months.  And specifically references the

12    labeling including the made from fresh potatoes,

13    supporting why he reached that conclusion.

14         He alleges in paragraph 82, that he purchased

15    the simply potatoes product from a retail outlet in the

16    second half of 2017, for no less than $3.99 which he

17    alleges to be a premium he paid, in reliance on the

18    characteristics of the product, as he understood them

19    from the context of the defendants' packaging.

20         The defendants move to dismiss the case for

21    failure to state a claim in the alternative to strike

22    plaintiff's nationwide class allegations.  The defendants

23    addressed each of the six claims in turn, arguing that

24    the case first should be dismissed on the grounds that

25    the plaintiff's claims are expressly preempted by federal

6

Proceedings

1  labeling regulations promulgated by the Food and Drug

2  Administration and then arguing as to other grounds for

3  dismissal under 12(b)(6) in addition to preemption.

4  Defendant also argues that the plaintiff lacks standing

5  for injunctive relief.

6           First addressing the preemption issue, the

7  defendant argues that the plaintiffs claims with regard

8  to the statements "made with real butter", and relating

9  to the use of the word "fresh", are preempted because

10  regulations promulgated by the FDA affirmatively permit

11  the use of these statements in labeling, thereby

12  preempting any state law claim which would prohibit their

13  use.

14           Under Supreme Court jurisprudence, federal

15  preemption of state law should be evaluated by looking

16  first to the purpose of congress in creating the federal

17  law at issue, and second, in cases in which congress has

18  legislated in a field which the states had traditionally

19  occupied, a presumption against preemption should govern

20  without the clear and manifest purpose of congress to

21  disrupt it.  That's Wyeth v. Levine, 55 US -- 555 US 555,

22  at page 565 (2009).

23           Because of its relationship to public health

24  and safety, Food and Drug regulation has been held to be

25  such a field; Ackerman v. Coca-Cola Co. (2010) 2925955 at

7

Proceedings

1   page 6, (E.D.N.Y. 2010), collecting other cases.

2          Further, where congress has provided an express

3   preemption provision in the statute, the presumption

4   against preemption requires courts to read the clause

5   narrowly.  That's from the Ackerman case, as well.

6          Here, congress has provided an express

7   preemption provision at 21 USC Section 343-1(a)(5) and

8   the preemption of state law with regard to nutrient

9   content claims as defined in 21 USC Section 343(r)(1), is

10  well established.

11         However, where the disputed label components do

12  not qualify as such, it is not clear that the presumption

13  against preemption should be disturbed and I am applying

14  that to this situation, especially when you combine the

15  allegations regarding the context of all of the labeling

16  together, I don't believe that preemption should apply to

17  this case -- the parties -- based upon the allegations.

18         The parties agree that made with real butter

19  appears as an example of a claim which is generally, and

20  I emphasize the word generally, not an implied nutrient

21  content claim.  21 CFR Section (b)(3).  And that fresh is

22  used by defendant in a way that complies with the

23  requirements set forth in 21 CFR Section 101.95.

24         First, that fact with neither made with real

25  butter nor fresh, is a nutrient content claim, appears to

8

Proceedings

1    be -- remove them from the scope of the preemption

2    provision at 21 USC Section 343-1(a)(5).

3              Other courts have also found that claims

4    against similar non-nutrient content statements are not

5    preempted by the NLEA, including Fitzhenry-Russell v. Dr.

6    Pepper Snapple Group, Inc., 2017 WL 4224723 (N.D.Cal.

7    September 22, 2017), finding that claims addressing "made

8    with real ginger" were not preempted, as well as Red v.

9    Kraft Foods Inc. 754 F.Supp 2d 1137, 1143 (C.D. CA 2010),

10   finding that claims addressing "made with real ginger and

11   molasses" and "made with real vegetables" were not

12   preempted.

13             The defendants also, the second contention that

14   because of the use of each of these terms expressly

15   permitted by the regulations, plaintiff's state law

16   claims are thereby preempted, I think again, overlooks

17   the fact that these -- part of the allegations are that

18   these phrases are being used in combination to create a

19   false and misleading impression to the consumer.

20   Although made with real butter is listed in the

21   regulations as an example, and the defendant can use

22   fresh in compliance with the relevant regulations, each

23   claim must nonetheless in its totality, comply with the

24   requirements of 21 USC Section 343(a) which deems food

25   misbranded, if its labeling is false or misleading in any

9

Proceedings

1    particular.

2              Here in paragraph -- including in paragraphs 58

3    through 60, the plaintiff is alleging that the made with

4    real butter and milk claim, complemented by the

5    surrounding representations including Simply Potatoes,

6    simple, fresh, and one of nature's simplest foods, in

7    combination are creating a false and misleading

8    representation to the consumers.  So I don't believe that

9    the case should be dismissed at this juncture, based upon

10   preemption.

11             With respect to the particular claims, I find

12   plausible claims have been stated.  New York General

13   Business Law Sections 349 and 350, I will address first.

14   The defendant seeks to dismiss those claims which

15   prohibit deceptive acts or practices which prohibit

16   deceptive acts or practices in the conduct of any

17   business trade or commerce or in the furnishing of any

18   services; that's 349.  As well as false advertising in

19   the conduct of any business trade or commerce, or in the

20   furnishing of any services, that's 350.

21             I've outlined the elements in a case called

22   Kilgor v. Ocwen Loan Servicing, LLC, 89 F.Supp 3d 526 at

23   535 and 36 (EDNY 2015).  For 349, plaintiff must

24   demonstrate:

25             One, the defendants' deceptive acts were

Proceedings

1    directed at consumers.

2           Two, the acts are misleading in a material way;

3    and

4           Three, the plaintiff has been injured as a

5    result.

6           With regard to the material misleading element,

7    "The New York Court of Appeals has adopted and objective

8    definition of 'misleading' under which the alleged act

9    'must be likely to mislead a reasonable consumer acting

10   reasonably under the circumstances.'"  That's a Second

11   Circuit quote from Orlander v. Staples, Inc. 802 F.3d 289

12   at 300 (2d. Cir. 2015).

13          The standard for recovery under Section 350,

14   while specific to false advertising is otherwise

15   identical in terms of the elements to Section 349.

16   Himber v. Intuit, Inc., 2012 WL 4442796 at page 9.

17   That's decision I issued in September 25th of 2012,

18   quoting other cases.

19          I find that plaintiff has plausibly alleged a

20   claim as relates to the elements for both 349 and 350.

21   The defendant argues that no reasonable consumer would

22   imply the absence of margarine into a claim that the

23   product is made with real butter, rejecting plaintiff's

24   allegation that margin is historically and in the mind of

25   the common consumer, a less desirable, artificial

11

Proceedings

1    alternative to butter.

2         Similarly, the defendant argues that the use of

3    the word fresh to describe the potatoes from which Simply

4    Potatoes is made, would not lead the reasonable consumer

5    to believe that the product as a whole is fresh, where

6    fresh means just prepared rather than shelf stable.

7         Although obviously these arguments can all be

8    made again at the summary judgment stage, I don't believe

9    that they undermine the plausibility of plaintiff's claim

10   with respect to 349 and 350.  Plaintiff has plausibly

11   alleged the defendants' product packaging is directed at

12   consumers at large and that through the payment of the

13   premium, and in reliance on the defendants' packaging,

14   suffered an economic injury.

15        With regard to the material misleading element,

16   the plaintiff has plausibly alleged that a reasonable

17   consumer could be misled by the claim made with real

18   butter and milk on a product containing margarine, like

19   the other words on the packaging, including terms like

20   simply, simple and simplest.  And plaintiff further

21   plausibly alleged that one of the other claims on the

22   packaging, a reasonable consumer might be misled about

23   the word fresh as it relates to the product.

24        Accordingly, I am denying the motion to dismiss

25   those claims.

Proceedings

1          I would just note, and plaintiff did supply the

2    citation.  I had seen it independently of plaintiff

3    providing it to the Court.  The Second Circuit, while

4    this motion was pending, did issue a decision in a case

5    called Mantikas, M-A-N-T-I-K-A-S, v. Kellogg Company, 910

6    F.3d 633 (2d.Cir 2018) and obviously the facts of each

7    case are different.  I believe this provides overall

8    guidance to district courts that when it's plausibly

9    alleged that a consumer could be misled with respect to

10   this type of labeling, the courts should not on a motion

11   to dismiss, conclude otherwise.

12          In the decision, the Court noted on page 638,

13   where the defendant had contended, citing a number of

14   district court decisions that had dismissed these types

15   of claims at the motion to dismiss stage, that as a

16   matter of law, it's not misleading to state that a

17   product is made with a specific ingredient, if that

18   ingredient is, in fact, present.

19          The Second Circuit rejected that and noted that

20   rationale would validate highly deceptive advertising and

21   labeling.  It goes onto discuss the Iqbal-Twombly

22   standard and it is clear to be based upon that decision,

23   the Second Circuit believes that the type of pleading

24   that we have here in this case is sufficient to plausibly

25   allege that type of false or misleading is advertising or

13

Proceedings

1    statement to the consumer, to a reasonable consumer and

2    that these are more properly addressed at a summary

3    judgment stage.

4             With respect to the fraud claim, the Court

5    reaches the same conclusion that it should not be

6    dismissed.  The standard for fraud claim is contained in

7    an opinion I wrote, McAnaney v. Astoria Financial Corp.,

8    665 F.Supp 2d, 132 at 176 (EDNY 2009).  The elements are:

9             A false representation of material fact.

10            Second, knowledge by the party who made the

11   representation that it was false when made; and

12            Justifiable reliance by the plaintiff; and

13            Four, damages.

14            I believe these have been plausibly alleged in

15   the complaint.  The defendant argues specifically that

16   plaintiff has failed to plead his fraud claim addressing

17   the packaging statements that Simply Potatoes are made

18   with or made from fresh potatoes with sufficient

19   specificity, particularly with regard to fraudulent

20   intent.

21            The Court believes that the pleading is

22   sufficient in that regard and with regard to each of the

23   elements, the plaintiff plausibly alleges a false

24   representation of material fact on the theory, among

25   other things, that a reasonable consumer might be misled

14

Proceedings

1  about the product based on the use of fresh on the

2  packaging, in combination with the other terms.

3        With respect to the scienter element, the

4  plaintiff specifically pled that a 2014 digital brochure

5  created by defendants for food service and restaurant

6  industry distribution contains survey results indicating

7  that 83 percent of consumers believed that refrigerated

8  potatoes are fresh, that's paragraphs 41 and 42,

9  plausibly alleging that that the defendant knew a

10  reasonable consumer might be misled by the use of the

11  term fresh in the context of refrigerated potatoes.  So I

12  don't believe at this stage that the fraud claim should

13  be dismissed.

14        Moving to unjust enrichment, I do dismiss the

15  unjust enrichment claim as I noted in Wurtz v. Rawlings

16  Company, LLC, 2014 WL 4961422 (E.D.N.Y. October 3rd,

17  2014), citing Second Circuit law.  In order to prove a

18  claim under New York Law, plaintiff must demonstrate:

19            (1) that the defendant benefitted,

20            (2) at the plaintiff's expense; and

21            (3) that equity and good conscience require

22  restitution.

23        That's Beth Israel Medical Center v. Horizon

24  Blue Cross and Blue Shield of N.J., Inc. 448 F.3d 573,

25  586 (2d Cir. 2006).

Proceedings

1    However, it's also clear under New York Law

2    that unjust enrichment, and I am now quoting from a case

3    I will cite in a moment, "Is not available where it

4    simply duplicates or replaces a conventional contract or

5    tort claim."  Weisblum v. Prophase Labs, Inc., 88 F.

6    Supp. 3d 283 (SDNY 2015).

7         Applying this settled principle under New York

8    Law, another judge in this court recently dismissed,

9    recently being last year, an unjust enrichment claim

10   where it was duplicative of a 349 and 350 false

11   advertising and fraudulent misrepresentation claims.

12   That's Davis v. Hain -- the Hain Celestial Group, Inc.,

13   2018 U.S.Dist. Lexis 56794 (EDNY April 3, 2018).

14        I reached a similar conclusion here that

15   because the plaintiff's unjust enrichment claim is

16   entirely duplicative and based upon the same alleged

17   misrepresentations that are made in the other claims,

18   that it is duplicative of the other claims and therefore,

19   is dismissed under New York Law.

20        With respect to the breach of an express

21   warranty and implied warranty of merchantability, with

22   respect to the express warranty claims, I set forth the

23   standard in Hollman v. Taser International, Inc., 928

24   F.Supp 2d 567 at page 681 (EDNY 2013).  I incorporate

25   that standard here.

16

Proceedings

1        Defendant argues that the plaintiff fails to

2   plausibly allege an express warranty claim because he

3   fails to plead the existence of the express warranty in

4   question.  Namely, defendant contests the notion that the

5   claim made with real butter and milk can be read as an

6   affirmation regarding the presence or absence of margin,

7   while plaintiff alleges that it expressly warrants the

8   absence of margarine in the product.  That's paragraph

9   92.

10        Again, at a motion to dismiss stage, I think

11   the plaintiff has plausibly alleged that a reasonable

12   consumer could be misled by the claim and defendant has

13   failed to cite any New York case law addressing the

14   implied absence argument in the context of an express

15   warranty claim.  So I think it would be premature to

16   dismiss the express warranty claim at this juncture.

17        I do grant the motion as it relates to the

18   implied warranty of merchantability claim.  The applied

19   warranty of merchantability claim is governed by New York

20   Uniformed Commercial Code Section 2-314(1).

21        I don't need to reach the plausibility of the

22   plaintiff's claim because as I agree with Judge Furman's

23   analysis in Weisblum v. Prophase Labs, Inc., 88 F.Supp.

24   3d 283 (SDNY 2015), that the law -- it's at page 296, the

25   law is clear that absent any privy of contract between

Proceedings

1   plaintiff and defendant, such a claim cannot be sustained

2   as a matter of law, except to recover for personal

3   injuries.  Other cases have reached the same conclusion

4   that Judge Furman cites, including Freidman v. General

5   Motors Corp., 2009 WL 454252, page 2, (S.D.N.Y. February

6   23, 2009).

7           Here, plaintiff has failed to allege any

8   privity of contract between the plaintiff and the

9   defendant, as plaintiff purchased the product at a retail

10  store and because there's obviously no personal injury

11  alleged here as a result of the defendant's conduct, I

12  conclude that the breach of implied warranty of

13  merchantability should be dismissed.

14          Defendant -- moving to the class allegations,

15  plaintiff moves to strike the nationwide class

16  allegations, arguing that the majority of the putative

17  class members would not have standing under Section 349

18  and 350 and that because the common law claims of

19  hypothetical, non-New York residents, must lie in

20  established standing under the common law of their

21  respective states.  The absence of non-New York

22  plaintiffs in this case should be fatal to the class

23  allegations.

24          I note generally that motions to strike are

25  generally looked upon with disfavor.  Chenensky v. New

18

Proceedings

1   York Life Insurance Co., (SDNY April 27, 2011).  And I

2   conclude in this case, that there is no basis to strike

3   the allegations as been noted in the case called

4   Ironforge.com v. Paychex Inc., 747 F.Supp 2d 384, 404,

5   (W.D.N.Y. 2010).  A motion to strike class allegations

6   under Rule 12(f) is even more disfavored because it

7   requires a reviewing court to preemptively terminate the

8   class aspects of litigation, solely on the basis of what

9   is alleged in the complaint and before plaintiffs are

10  permitted to complete the discovery to which they would

11  otherwise would be entitled to on the questions relevant

12  to the class certification.

13          The Court reaches the same conclusion here, and

14  I understand, obviously although a motion to strike that

15  addresses issues separate and apart from the issues that

16  will be decided on a class certification motion is not

17  procedurally premature.  I conclude that that is not the

18  case here.

19          I also note with respect to the second argument

20  regarding common law claims of non-New York residents,

21  and the need to establish standing in their respective

22  states, I think there has been case law that has

23  addressed that argument recently, suggesting otherwise.

24          But in any event, I think it's premature to

25  strike the class allegations at this stage of the

19

Proceedings

1   litigation.

2          With respect to the injunctive relief, the

3   defendant is correct that there is no basis for

4   injunctive relief here.  I set forth the standard -- the

5   standing -- standard for standing in a recent opinion,

6   Preserve at Connetquot Homeowners Assoc., Inc. v. Costco

7   Wholesale Corp., 2019 WL 337093 (E.D.N.Y. January 28,

8   2019) at page 5. In the context of a prospective

9   injunctive relief, the Supreme Court and the Second

10  Circuit concluded that a plaintiff lacks standing to

11  pursue injunctive relief, if the plaintiff does not

12  establish a real or immediate threat of injury, rather

13  than allegations of future harm that are merely

14  speculative.

15         I noted in that opinion that although past

16  injuries may provide a basis for standing to seek money

17  damages, they do not confer standing to seek injunctive

18  relief unless the plaintiff can demonstrate that she is

19  likely to be harmed again the future in a similar way.

20         Here the harm that plaintiff alleges is the

21  purchase of Simply Potatoes product at a premium in

22  reliance on defendant's alleged misrepresentations on the

23  package because he believed it to be fresh, as in just

24  prepared and to contain only butter and not margarine

25  because plaintiff now knows that the product is shelf

20

Proceedings

1  stable, can be on the shelf for months and contains

2  margarine.  He cannot purchase the product in reliance on

3  those characteristics again and therefore cannot

4  demonstrate that he's likely to be harmed in the future

5  in a similar way.  He hasn't allegedly any other present

6  harm that might recur nor any continuing harm and

7  therefore, he lacks standing for injunctive relief.

8        To the extent he is trying to assert some type

9  of third-party standing for other consumers, because I

10  think that was mentioned in the opposition, I agree with

11  other courts that have concluded that a plaintiff does

12  not have the ability to try to allege standing on behalf

13  of others.  That's Greene v. Gerber Products Co., 262 F.

14  Supp 3d 38, at page 56 (EDNY 2017).

15        So in conclusion, the Court believes that there

16  are plausible claims stated under New York law with

17  regard to the Section 349 and 350, express warranty and

18  common law fraud claims that are not preempted at this

19  point but not with regard to the implied warranty of

20  merchantability or unjust enrichment claims.

21        And the motion to strike the nationwide class

22  allegations is denied but I do find that there is no

23  standing for injunctive relief.

24        All right.  Are there any questions regarding

25  the Court's ruling from the plaintiff's counsel?

21

Proceedings

1          MR. SHEEHAN:  No, your Honor.

2          THE COURT:  Defendant's counsel?

3          MR. HORVATH:  No, your Honor.

4          THE COURT:  All right.  Then I assume you're

5    under the supervision of the magistrate judge on

6    discovery.  Correct?

7          MR. SHEEHAN:  We haven't been --

8          MR. HORVATH:  That was (indiscernible).

9          MR. SHEEHAN:  -- (indiscernible) discovery but

10   we will be, yes.  Yes, your Honor.

11         THE COURT:  I'm sorry, say that again.

12         MR. SHEEHAN:  Oh, I said, your Honor, that yes,

13   we are under the supervision of the magistrate, although

14   as defendants' counsel accurate noted, discovery has not

15   been commenced at this point.

16         THE COURT:  Right.  Is there a conference date

17   scheduled?  That's why, obviously, I did the oral ruling.

18   I didn't want to hold up the case further but has there

19   been a conference even scheduled or no?

20         MR. HORVATH:  No, your Honor.

21         THE COURT:  Okay.  So --

22         MR. SHEEHAN:  I don't believe so, your Honor.

23         THE COURT:  We'll notify -- there will be a

24   short order that will issue, just memorializing the

25   ruling and we'll also contact the magistrate judge's

22

Proceedings

1  chambers just to make sure they knows that -- Judge

2  Lindsay, that they should initiate the discovery process.

3          You might want to discuss among yourselves that

4  process.  I think Judge Lindsay often will cancel an in-

5  person appearance if there's agreement just let you

6  submit a schedule.  So you might want to try to work that

7  out.  All right?

8          MR. SHEEHAN:  Thank you.

9          THE COURT:  All right.  Thank you.  Have a good

10 day.

11         MR. HORVATH:  Your Honor, just --

12         THE COURT:  Yes.

13         MR. HORVATH:  Your Honor, just to clarify in

14 terms of obtaining a copy of your opinion, you stated

15 that there will be no written opinion and we should

16 obtain a transcript.

17         THE COURT:  Yes.

18         MR. HORVATH:  Okay, just wanted to be clear.

19 Thank you.

20         THE COURT:  Yeah, you can -- if you call the

21 clerk's office, there will be an FTR number on the docket

22 sheet that will be the identifier for purposes of the

23 recording.  If you contact the clerk's office, give them

24 those numbers.  They'll send it out to a company for

25 transcription, okay?

Proceedings

1      MR. HORVATH:  Yes.  Thanks, your Honor.

2      THE COURT:  All right.  Have a good day.

3      MR. HORVATH:  Thank you.

4      MR. SHEEHAN:  Okay, bye.

5      MR. HORVATH:  Thank you.  You, too.

6          (Matter concluded)

7             -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

# C E R T I F I C A T E

       I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

       I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

       IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **April**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.