## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

Josh Berger, individually and on behalf
of all others similarly situated,

                    Plaintiff,

        -against-

Michael Foods, Inc.,

                  Defendant.

Case No. 2:17-cv-06728-RRM-ARL

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

FOLEY HOAG LLP

August T. Horvath
(*ahorvath@foleyhoag.com*)
Natasha N. Reed
(*nreed@foleyhoag.com*)
Ellen Y. Cheong
(*echeong@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax: (646) 927-5599

*Attorneys for Defendant Michael
Foods, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND..................................................................................................2

ARGUMENT...........................................................................................................................5

**I.**     Plaintiffs Fail to Allege a Plausible Deception .................................................................5

    **A.**     Legal Standard .........................................................................................................5

    **B.**     No Reasonable Consumer Would Believe that "Made with Real Butter and Milk" and/or "Simply Potatoes" Means that a Product Does Not Include Other Ingredients, such as Fats Made from GMOs. ................................................6

    **C.**     No Reasonable Consumer Would Believe that "Made with Fresh Potatoes" or "Simply Potatoes" Means that a Finished Prepared Food Product Is Freshly Made Out of Just Three Ingredients and Without Preservatives. ...........................9

    **D.**     Plaintiff's Other Theories about Miscellaneous Packaging Representations Have No Plausible Basis.........................................................................................10

**II.**    Plaintiffs' Pleading of Representative Plaintiffs and State Law Causes of Action Are

    Fatally Defective..................................................................................................................12

    **A.**     Plaintiffs' Class Allegations, Other than as to a New York Class, Should Be Dismissed...............................................................................................................12

    **B.**     Plaintiffs' Claims for the 48 States in which There Are No Representative Plaintiffs Must Be Dismissed..................................................................................13

**III.**   Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate ............15

    **A.**     Plaintiffs Fail to State a Claim for Negligent Misrepresentation...........................15

    **B.**     Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability..................................................................................16

    **C.**     Plaintiffs Fail to State a Claim for Unjust Enrichment..........................................16

i

**IV.**    Plaintiff Lacks Standing to Seek Injunctive Relief............................................................16

CONCLUSION..............................................................................................................................17

ii

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Conagra Foods, Inc*,
   No. 3:13-cv-01269, 2019 U.S. Dist. LEXIS 122807 (N.D. Cal. Jul. 22, 2019) ................. 12, 13

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
   115 A.D.3d 128 (App. Div. 2014) ..................................................................................... 15, 16

*Bowring v. Sapporo U.S.A., Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ...................................................................................... 6

*Campbell v. Freshbev LLC*,
   322 F. Supp. 3d 330 (E.D.N.Y. 2018) ...................................................................................... 6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................................................. 16

*Conley v. Copiague Union Free School Dist.*,
   No. 2:16-cv-04546 (E.D.N.Y. June 14, 2018) (Memorandum and Order) .............................. 13

*Cruz v. City of New York*,
   232 F. Supp. 3d 438 (S.D.N.Y. 2017) ..................................................................................... 13

*Davis v. The Hain Celestial Group, Inc.*,
   297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................................................. 7, 17

*Dhir v. Carlyle Grp. Emple. Co.*,
   No. 16-cv-06378, 2017 U.S. Dist. LEXIS 162386 (S.D.N.Y. Sept. 29, 2017) ....................... 10

*Doe v. Solera Capital LLC*,
   No. 18-cv-1769, 2019 U.S. Dist. LEXIS 55860 (S.D.N.Y. March 31, 2019) .......................... 14

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. 14-2484, 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) .................................. 17

*Fermin v. Pfizer Inc.*,
   215 F. Supp. 3d 209 (E.D.N.Y. 2016) ................................................................................... 5, 6

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ..................................................................................................... 5

iii

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................... 5

*Henderson v. Gruma Corp.*,
   No. 10-4173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ................................... 8

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ....................................................... 17

*International Prods. Co. v. Erie R. R. Co.*,
   244 N.Y. 331 (1927) ...................................................................... 15

*J.A.O. Acquisition corp. v. Stavitsky*,
   8 N.Y.3d 144 (2007) ...................................................................... 15

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996) .................................................................. 15, 16

*Leguette v. Schwan's Co.*,
   No. 1:17-cv-07599, 2019 U.S. Dist. LEXIS 20158 (E.D.N.Y. Feb. 6, 2019) ......................... 12

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002) ........................................................... 12

*Manchouck v Mondeléz Intl., Inc.*,
   No. 13-civ-02148, 2013 LEXIS 138877 (N.D. Cal. Sep. 26, 2013) ....................................... 7, 8

*Mandarin Trading Ltd. V. Wildenstein*,
   16 N.Y.3d 173 (2011) ...................................................................... 15

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ............................................................... 7

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000), amended 209 F.3d 1032 (7th Cir. 2002) ................................ 10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ................................................................... 16, 17

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ............................................................... 5

*Pernod Ricard USA, LLC v. Bacardi U.S.A.*,
   653 F.3d 241 (3d Cir. 2011) .............................................................. 10

iv

*Red v. Kraft Foods, Inc.*,
No. 10-civ-1028, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ........................... 8

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)................. 5, 6, 7, 9

*Jane Roe v. Henry Wade*,
410 U.S. 113 (1973)................................................................................................................ 13

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ................................................................................................... 14

*Sensible Foods, LLC v. World Gourmet, Inc.*,
2012 LEXIS 21446 (N.D. Cal. Feb. 21, 2012) ......................................................................... 8

*Solak v. Hain Celestial Grp., Inc.*,
No. 3:17-CV-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270
(N.D.N.Y. April 17, 2018).......................................................................................................... 6

*Stoltz v. Fage Dairy Processing Industry, S.A.*
No. 14-cv-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sept. 22, 2015) ............ 14

*Tomasino v. Estee Lauder Cos., Inc.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....................................................................................... 17

*Verzani v. Costco Wholesale Corp.*,
No. 09-CV-2117, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010).......................... 5

**Statutory Authorities**

New York General Business Law §§ 349 and 350 ......................................................................... 5

**Other Authorities**

Barbara D. Schuller, How Much Is A Pat Of Butter?, BasenjiMom's Place (Nov. 16,
2018), https://www.basenjimom.com/pat-of-butter/. ............................................................... 11

v

## INTRODUCTION

This case is about whether the truthful promotion of one ingredient in a food product creates a negative implication that some different ingredient is not in that product. Plaintiffs Josh Berger, John Solak, Christopher Lemke, and Angela Wade ("Plaintiffs") allege that it does. Plain language, common sense, FDA regulations, and false-advertising case law all reject their contention. In their Second Amended Complaint ("Complaint," Dkt. 44), Plaintiffs add new substantive challenges to the packaging and labeling statements, along with new putative classes in every U.S. state, represented inappropriately by fictitious representative plaintiffs.

Simply Potatoes® mashed potato products are sold by Defendant Michael Foods, Inc. ("Michael Foods"). Two statements that appear on the front of the Simply Potatoes packaging, "Made with Real Butter and Milk" and "Made with Fresh Potatoes," are the basis of Plaintiffs' amended challenge, together with the name "Simply Potatoes" itself. Plaintiffs do not dispute that Simply Potatoes products *are* made with real butter. They also does not dispute that the ingredient statement on Simply Potatoes packaging clearly states, twice -- including once in bold lettering -- that the product also contains margarine that is derived from GMOs. Nonetheless, in the Second Amended Complaint, Plaintiffs allege that by its truthful statements that Simply Potatoes is "made with real butter and milk" and "fresh potatoes", consumers are somehow completely misled as to the presence of almost every other ingredient listed truthfully on the ingredient statement, including margarine (which is made with – although it does not contain – GMOs), artificial flavor, preservatives, and as to the "prepared-ness" of the product.

The Second Amended Complaint should be dismissed for several reasons:

**First**, Plaintiffs have not plausibly alleged how the statement "made with fresh potatoes, "Simply Potatoes" and/or "made with real butter and milk" is likely to deceive a reasonable

1

consumer into believing the Simply Potatoes products do not contain any other ingredient, namely margarine, artificial flavors, or preservatives.  Plaintiffs' entire Complaint revolves around one untenable proposition:  that by truthfully calling out the presence of three ingredients, the manufacturer is implying that no other ingredient (for example margarine) is present in the product.  The "made with real butter and milk" statement does not exclude or preclude the presence of any other ingredients, which are clearly listed in the product's ingredient statement. Plaintiffs also fail to allege facts sufficient to establish how the words "simply" or "made with fresh potatoes" would mislead a reasonable consumer into believing the finished product (as opposed to just the potatoes used to make the product) is freshly made just prior to sale and does not include preservatives.

**Second**, Plaintiffs' ancillary causes of action for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment fail because they are improperly and inadequately pled and/or because they are inappropriate for the facts alleged by Plaintiffs, as set forth fully below.

**Third**, even if Plaintiffs' claims were not dismissed on the merits for one or more of the reasons set forth above, his claims must be dismissed as to the alleged nationwide class and as to all sub-classes except for New York because the different state laws under which Plaintiffs purport to sue have materially different elements, with some not permitting class actions at all. In addition, Plaintiffs fail to properly identify a representative class plaintiff for 48 of the 51 states in which they purport to assert causes of action.

## FACTUAL BACKGROUND

Michael Foods produces, markets, and sells refrigerated mashed potato products under the brand name Simply Potatoes.  (Dkt. 44 ¶ 1).  Packaging for Simply Potatoes contains, among other things, the following wording depictions:

2

B5027443.4

- "Made with Real Butter & Milk"

- "Simply Potatoes" (a registered trademark)

- "Made from Fresh Potatoes" (part of a registered trademark) and "We use fresh, never frozen real potatoes"

- An image of a partially-melted pat of butter

(Dkt. 44 ¶¶ 4-7.)

In addition, labeling for Simply Potatoes contains an ingredient statement, which

discloses all ingredients contained in the product.  For example, the ingredient list for Simply

Potatoes "Traditional Mashed Potatoes" appears as follows on the product labels:

> **INGREDIENTS**: POTATOES, WHOLE MILK, BUTTER (CREAM, SALT), MARGARINE (LIQUID AND HYDROGENATED SOYBEAN OIL, WATER, SALT, CONTAINS LESS THAN 2% OF WHEY SOLIDS, VEGETABLE MONO & DIGLYCERIDES, SOY LECITHIN, SODIUM BENZOATE (PRESERVATIVE), ARTIFICIAL FLAVOR, VITAMIN A PALMITATE ADDED), SALT, CONTAINS ½% OR LESS OF THE FOLLOWING: DISODIUM PYROPHOSPHATE (ADDED TO MAINTAIN COLOR), POTASSIUM SORBATE AND SODIUM BISULFITE (ADDED TO MAINTAIN FRESHNESS).
> **CONTAINS MILK AND SOY**
> **PARTIALLY PRODUCED WITH GENETIC ENGINEERING (MARGARINE)**

(Dkt. 44 ¶ 9.)  This ingredient statement indicates that the products contain ingredients other than

potatoes, butter, and milk.  Artificial flavor appears once and margarine appears twice in the

ingredient list, appearing once in bold letters after the wording "partially produced with genetic

engineering."

The statement "Made with Real Butter & Milk" is true and accurate.  Simply Potatoes are

made with real butter and milk, as set forth in the ingredient list.  Plaintiffs do not dispute this

fact.  Plaintiffs also do not dispute, and indeed affirmatively allege, that butter in a food product

3

is valued for its own positive qualities, regardless of what else is or is not in the product.  (*e.g.* Dkt. 44 ¶ 16).

Plaintiff Berger filed this suit on November 17, 2017, alleging, in spite of all of the foregoing, that the Simply Potatoes package misleads consumers into believing that Simply Potatoes contains no margarine.  Plaintiff superseded this pleading with his First Amended Complaint on February 3, 2018, attempting to bolster his Complaint with several pages of material, including extensive allegations concerning recipes for home-cooked potatoes on the Internet that are completely irrelevant to the mind-set of a consumer in the refrigerated grocery store aisle contemplating the purchase of prepared, ready-to-eat mashed potatoes.  Michael Foods filed its motion to dismiss the First Amended Complaint for failure to state a claim on March 19, 2018 (Dkt. 29).  The Court granted in part and denied in part Defendant's motion to dismiss by oral order (Dkt. 35).

Plaintiffs subsequently filed their Second Amended Complaint on August 9, 2019, adding nearly 20 pages of new allegations.  Plaintiffs now allege a slew of new theories revolving around butter and margarine, including that the depicted pat of butter is deceptive as to how much butter is in the product; that the "Simply" in front of the name of the product deceives consumers as to the presence of GMOs, *i.e.* margarine; and that the presence of artificial flavor somehow deceives consumers into believing the butter flavor is from the butter that is actually in the product.  This motion addresses these new theories of liability that were not considered by the Court in connection with Michael Foods' earlier motion to dismiss the First Amended Complaint.

4

## ARGUMENT

### I.     Plaintiffs Fail to Allege a Plausible Deception

Plaintiffs' new claims that the truthful disclosure of the presence of butter, GMOs, and artificial flavor could deceive a reasonable consumer into believing something untrue about Simply Potatoes mashed potatoes are not plausible.

### A.     Legal Standard

To prove conduct is materially misleading as required under New York General Business Law §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled. *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015).  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  In so doing, courts consider the entire context of the alleged misrepresentations, including disclaimers and other disclosures elsewhere on the packaging.  *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016); *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in ad in dismissing consumer protection claims); *Verzani v. Costco Wholesale Corp*., No. 09-CV-2117, 2010 U.S. Dist. LEXIS 107699, at \*5-7 (S.D.N.Y. Sept. 28, 2010) (considering entire label on a food tray, which listed each item on the tray and its relative weight, in dismissing case alleging that the food tray's "net weight" label referred only to one item in the tray, not all of the items on the tray).

Although dismissal of false-advertising cases on this ground was once rare, a recent rash of meritless lawsuits has created a growing body of Rule 12 case law in this Circuit dismissing challenges to advertising claims because they would not deceive a reasonable consumer.  *See, e.g., Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS

5

125971, at \*8-16 (E.D.N.Y. July 26, 2019) (dismissing implausible allegations that "made with real butter" on mashed potato product implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270, at \*8-36 (N.D.N.Y. April 17, 2018) (name of "veggie straws" snacks and images of vegetables are truthful in that they imply the snacks are made from vegetables, and do not reasonably imply that the snacks contain fresh, whole, ripe vegetables); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (truthful claim that a juice is "cold-pressed" does not imply that it is only cold-pressed, and not also processed in any other way); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (beer did not mislead reasonable consumers that it was of Japanese origin where its Canadian origin was clearly stated); *Fermin*, 215 F. Supp. 3d at 211-12 (unused volume of pill bottle did not deceive consumers as to number of tablets where the table count was clearly disclosed on the bottle).

### B. No Reasonable Consumer Would Believe that "Made with Real Butter and Milk" and/or "Simply Potatoes" Means that a Product Does Not Include Other Ingredients, such as Fats Made from GMOs.

Plaintiffs' false advertising claims should be dismissed on the basis that no reasonable consumer would interpret "made with real butter and milk" and "simply potatoes" as an implied "no other fat ingredients containing GMOs" claim.  Judge Garaufis in this District recently considered, and dismissed, a closely similar case, alleging that a "made with real butter" claim on a similar mashed potato product implied the presence of no other fats in the product.  *Reyes*, 2019 U.S. Dist. LEXIS 125971, at \*8-11.  In *Reyes*, the court noted that the "made with real butter" claim on the Diner's Choice mashed potato product is truthful, and that "a reasonable consumer who was concerned about whether the mashed potatoes contained margarine would know that 'the devil is in the details' and thus would check the ingredients label."  *Id.* at \*9

6

(citing *Davis v. Hain Celestial*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018)).  Following *Davis*, the *Reyes* Court held that the proper analysis starts with whether the element challenged by the plaintiff is misleading, concluding that "made with real butter" is not misleading on a mashed potato product that is made with real butter.  *Reyes*, at *8-11.  If the allegedly misleading element is "ambiguous," a clarification on another part of the label may dispel any confusion.  *Id.* at *8-10.  On a mashed potato product, the clearly visible disclosure of vegetable oils as well as butter in the ingredient statement dispels any such confusion.  *Id.*

The recent Second Circuit decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), is not to the contrary.  As Judge Garaufis noted in the *Reyes* ruling, Kellogg in *Mantikas* prominently featured "Whole Wheat" as a major marketing element of its Cheez-It crackers, when in fact, the flour used was predominantly enriched white flour.  *Reyes*, at*11.  Here, as in *Reyes*, it is undisputed that the Products contain more butter than other fats.  Plaintiffs here allege that it is somehow misleading to formulate a product in such a way as to "justify" its marketing claims, but that is actually just truthful advertising.

Like the statement in *Reyes*, the statement "made with real butter and milk," on Simply Potatoes mashed potatoes is not deceptive because it simply identifies the fact that real butter is an ingredient, which adds value to the product, regardless of what else is or is not in the product.  Knowing that butter has value for its own sake, as Plaintiffs allege extensively (Dkt. 44 ¶¶ 10-61), no reasonable consumer in a grocery store would believe that products have no vegetable-based fats containing GMOs, or any other ingredients, simply because the label states "made with real butter and milk."  Federal courts have time and time again dismissed virtually identical claims where the plaintiffs have alleged "made with" ingredient claims were misleading.  These courts have held that such statements are factually true if the product indeed contains the

7

ingredient, and that they are therefore not deceptive as a matter of law. *See e.g*., *Manchouck v Mondeléz Intl., Inc*., No. 13-CIV-02148, 2013 U.S. Dist. LEXIS 138877, at *7-9 (N.D. Cal. Sept. 26, 2013) (claim that "made with real fruit" on fig cookie labels deceptively implied product excluded mechanically processed puréed fruit "strains credibility;" no reasonable consumer likely to be deceived and putative class action complaint dismissed without leave to amend); *Henderson v. Gruma Corp.*, No. 10-CIV-4173, 2011 U.S. Dist. LEXIS 41077, at *33-34 (C.D. Cal. Apr. 11, 2011) (dip packaging claiming made "with garden vegetables" not likely deceptive to a reasonable consumer where product contained avocado powder, dehydrated onion, garlic powder, and bell pepper and thus "contain[ed] vegetables that can be grown in a garden"); *Red v. Kraft Foods, Inc.*, No. 10-civ-1028, 2012 U.S. Dist. LEXIS 164461, at *10-12 (C.D. Cal. Oct. 25, 2012) (reasonable consumer not likely to be deceived into believing that claim "made with real vegetables" for crackers means product is healthy and contains a significant amount of vegetables, because reasonable consumers know crackers are not composed primarily of fresh vegetables); *Sensible Foods, LLC v. World Gourmet, Inc*., No. 11-2819, 2012 U.S. Dist. LEXIS 21446, at *16-20 (N.D. Cal. Feb. 21, 2012) (court dismisses claim that product names "Veggie Straws" and "Apple Straws" for snack foods made primarily of potatoes is misleading, holding the name was not deceptive because the products indeed contained vegetables and apples). The court in *Sensible Foods* went as far as to say "it strains the boundaries of the English language — to say that products made primarily from potatoes are not made of 'veggies.'" *Id*., at *17-18.

The same rationale can be applied in the instant case, as it is implausible that a reasonable consumer would be misled into thinking that "made with real butter and milk" means Simply Potatoes mashed potatoes cannot also contain vegetable fats made from GMOs. Likewise, the use of "simply" in the name of the product does not imply the exclusion of other ingredients

8

containing GMOs, when those ingredients (*i.e.* margarine) are plainly listed, twice, in the ingredient list on the back of the box. Plaintiffs' allegations about home cooking practices and Internet recipes (¶¶ 46-61) ignore the context of a consumer purchasing a ready-to-eat mashed potato product, and provide no information relevant to a reasonable consumer acting reasonably under those circumstances.

>    **C.    No Reasonable Consumer Would Believe that "Made with Fresh Potatoes" or "Simply Potatoes" Means that a Finished Prepared Food Product Is Freshly Made Out of Just Three Ingredients and Without Preservatives.**

Plaintiffs' substantive allegations about their other claim, that the claim "made with fresh potatoes" somehow communicates that the final Simply Potatoes mashed potato product is a fresh vegetable, consist of allegations out of which it is impossible to discern a coherent, let alone plausible, cause of action. (Dkt. 44 ¶¶ 66-90.) This allegation, too, was dismissed by Judge Garaufis in the closely similar *Reyes v. Crystal Farms* case. In that case, the packaging claim was "Made with fresh whole potatoes," on a similar prepared mashed potato product. In that case, as here, the plaintiff admitted that the clear, unambiguous meaning of the claim – that the potatoes are raw and unfrozen when incorporated into the product – is truthful. *Reyes*, at *12. Given that the defendant's "made from" claim was truthful and that it would be obvious to any consumer that a cooked, seasoned, mashed potato product could not be raw, "Plaintiff's allegation is implausible." *Id.*

Similar allegations were accepted by Judge Bianco as stating a plausible claim in his ruling on the motion to dismiss the First Amended Complaint in this case, but Plaintiffs have now added further implausible allegations to their theory. Plaintiffs now add the further allegation that "simply" indicates that the product "will only contain potatoes, butter, milk and those variations in the Product line" and, in particular, no preservatives or artificial flavors.

9

(¶¶ 83-90.)  Plaintiffs offer no basis to entertain the notion that any reasonable consumer interprets "simply" as meaning "only the ingredients highlighted on the front label" when the ingredient list on the back label clearly lists all the ingredients in the product.  Moreover, Plaintiffs contradicts themselves and cite other similar frozen mashed potatoes products as quintessential examples of correct labeling, not withstanding that these products contain similar preservatives.  (¶122)  Plaintiffs over-reach and search for some non-obvious meaning to Simply Potatoes' packaging language, but where the meaning of a marketing claim is unambiguous, allegations of alternative implied meanings are implausible and should be dismissed.  *See Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883 (7th Cir. 2000), amended, 209 F.3d 1032 (7th Cir. 2002) (holding that "1st Choice of Doctors" is an unambiguous claim and denying plaintiffs the opportunity to prove that it is interpreted as "chosen by a majority of doctors"); *Pernod Ricard USA, LLC v. Bacardi U.S.A.*, 653 F.3d 241, 251-52 (3d Cir. 2011) (finding that statement of product origin was unambiguous and plaintiff's interpretations were implausible).

### D.      Plaintiff's Other Theories about Miscellaneous Packaging Representations Have No Plausible Basis

Plaintiffs make several other allegations that are untethered to any theory of liability, unsupported by any credible factual basis.  Even on a Rule 12 motion, the Court need not credit conclusory allegations that contradict common knowledge and common sense.  *Dhir v. Carlyle Grp. Emple. Co.*, No. 16-cv-06378, 2017 U.S. Dist. LEXIS 162386, at *20-22 (S.D.N.Y. Sept. 29, 2017) (dismissing theory of fraud that "contradicts not only common sense, but also other allegations in Plaintiff's own complaint").

Plaintiffs speculate that "artificial flavor" in the Products' ingredient statement is "likely" butter flavor.  (¶¶ 111-115.)  Plaintiffs offer not the slightest reason to imagine that Simply Potatoes are, or need to be, flavored to taste like butter, especially considering that they actually

10

contain butter.  There are any number of seasonings and other flavors that the "artificial flavor" in Simply Potatoes may supply, and it is implausible to allege that rather than any such flavor, the artificial flavors are there to imitate something that is already in the product.  Again, there is no plausible theory of consumer deception associated with these allegations.

Plaintiffs contend that the visual depiction of a "pat" of butter on one variety of Simply Potatoes conveys the presence of a specific amount of butter, because "the standard size of a pat of butter is equivalent to half a tablespoon."  (¶¶ 62-65.)  This is false as a matter of common knowledge; a pat of butter is not a standard size, and pats of butter come in many sizes. Plaintiffs; source for this contention, a food blog called "Basenji Mom's Place," not only is not authoritative, but explicitly says the opposite of what Plaintiffs allege it says:  "the size of what we call 1 pat of butter can vary according to packaging."  Barbara D. Schuller, How Much Is A Pat Or Butter?, BasenjiMom's Place (Nov. 16, 2018), https://www.basenjimom.com/pat-of-butter/.  Plaintiffs also contend that the actual amount of butter in the Products can be deduced from the Vitamin A declaration in the Products' Nutrition Facts panel.  (¶¶ 62-65.)  This is also false; the amount of Vitamin A in butter is highly variable and, to avoid any risk of over-declaring a nutrient, food companies often do not disclose the estimated Vitamin A content of their butter ingredients.  In short, Plaintiffs have neither alleged plausibly that the Simply Potatoes packaging communicates a specific amount of butter in the Products nor that the specific amount is not, in fact, present.

11

## II.     Plaintiffs' Pleading of Representative Plaintiffs and State Law Causes of Action Are Fatally Defective

### A.     Plaintiffs' Class Allegations, Other than as to a New York Class, Should Be Dismissed

Judge Weinstein in this District recently dismissed a national class in a case similar to this, holding that "since several of their claims sound in fraud, a nationwide class action would require application of the laws of at least fifty jurisdictions."  *Leguette v. Schwan's Co.*, No. 1:17-cv-07599, 2019 U.S. Dist. LEXIS 20158, at \*2-3 (E.D.N.Y. Feb. 6, 2019) (citing *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002)).

In a recent decision in *Allen v. Conagra Foods, Inc.*, a U.S. District Court in the Northern District of California considered the appropriateness of permitting various out-of-state subclasses to which defendant Conagra objected because of material differences in state deceptive-practices laws.  *See Allen v. Conagra Foods, Inc.*, No. 3:13-cv-01269, 2019 U.S. Dist. LEXIS 122807 (N.D. Cal. Jul. 22, 2019).  Plaintiffs in that case did not even move to certify a nationwide class for any cause of action other than unjust enrichment, which was denied:  "Because each state's law would have to apply, individualized issues predominate over common ones."  *Id.* at \*17. The *Allen* court considered the differences in the various states alleged.  Among other things, that court found that class actions are not permitted under the same consumer protection statutes of Alabama, Georgia, Mississippi, Montana, Ohio, and Virginia that Plaintiffs allege in support of their class action here (¶ 156), and therefore that it would be inappropriate to permit any class treatment of consumers in those states.  *Allen* at \*26-56.  In addition, the court found that monetary damages are not available under the Minnesota Deceptive Trade Practices Act, and limited this sub-class to injunctive relief.  *Id.* at \*56-64.  The court denied class certification as to several other states because of state-to-state differences in elements such as individualized

12

causation and reliance and methods of computing damages.  *Id.* at \*26-56.  Here, Plaintiffs have not alleged that the Second Amended Complaint pleads all necessary elements under all state statutes in his list in Paragraph 156, let alone that his claims in all such states could be adjudicated as part of a single class.  All of Plaintiffs' class allegations, except for those alleging a New York class, therefore should be dismissed.

### B. Plaintiffs' Claims for the 48 States in which There Are No Representative Plaintiffs Must Be Dismissed.

The Second Amended Complaint adds numerous representative plaintiffs to the original Complaint, filed solely by Berger, to provide purported class representatives for state sub-classes of consumers in all 59 states (plus D.C.).  These include four named plaintiffs identified in Paragraphs 136 to 139 of the Second Amended Complaint and "Jane Doe plaintiffs [who] are citizens of the 44 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs."  ¶ 140.  These 44 "Jane Doe" plaintiffs are not real people.  They are imaginary people whom Plaintiffs' Counsel hopes might exist in 44 states.  Pleading the existence of fictitious plaintiffs is improper, and cannot support claims in the 44 states for which they are proffered as class representatives.

A plaintiff may name a pseudonymous "Jane Doe" defendant, when the plaintiff has reason to believe that unlawful acts were committed by a specific person whose identity is not yet known, and is making reasonable efforts to discover that person's identity.  *See Conley v. Copiague Union Free School Dist.*, No. 2:16-cv-04546 (SJF) (AYS) (E.D.N.Y. June 14, 2018) (Memorandum and Order), citing *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017).  A plaintiff may also file a case under a pseudonym to protect the party's privacy and security, as was done, for example, in the famous *Roe v. Wade* case.  *See Jane Roe, et al v. Henry Wade*, 410 U.S. 113 (1973) ("Jane Roe" used as pseudonym for Norma McCorvey).

13

Here, Plaintiff does not and could not allege that representative class false-advertising plaintiffs
are so concerned about retaliation or invasion of privacy that they need to sue under
pseudonyms, which would be required to sue under a pseudonym in this District. *Doe v. Solera
Capital LLC*, No. 18-cv-1769, 2019 U.S. Dist. LEXIS 55860, at \*6-9 (S.D.N.Y. March 31, 2019)
(citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008)).  Instead,
Plaintiff has no specific persons in mind when he alleges "Jane Doe" plaintiffs, but hopes and
speculates that appropriate representative plaintiffs might exist somewhere.

We are aware of no cases in which a plaintiff has been allowed to sue as a "Doe" when
the pseudonym does not represent an actual person, but merely a hypothetical type of person
whom the plaintiff or plaintiff's counsel hopes may exist and be discovered at some later time.
This use of "Doe" plaintiffs is inconsistent with the limited purposes for which Doe pleading is
allowed, and therefore improper.  The fictitious plaintiffs pled in Paragraph 140 of the Second
Amended Complaint should be dismissed.  Without these plaintiffs, the Second Amended
Complaint's sub-classes and claims under the laws of the remaining 47 states and District of
Columbia (all but New York, Florida, and Wisconsin) should also be dismissed because there is
no named representative plaintiff with standing to pursue them. *See Stoltz v. Fage Dairy
Processing Indus., S.A.*, 14-cv-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at \*35 (E.D.N.Y.
Sept. 22, 2015) (holding, in a purported multistate consumer false-advertising class action
similar to this one, that "If John Doe and Jane Doe do not exist, there are no parties before the
Court who have alleged standing to assert claims under Georgia or Texas state law requiring
dismissal of these claims.")

14

### III.    Plaintiffs' Ancillary Causes of Action are Improperly Pled and/or Inappropriate

Plaintiffs allege several common-law causes of action that piggyback on the facts of its main claim lodged under state consumer protection statutes.  These ancillary claims all fail because Plaintiffs' core theory of deception fails.  Even if Plaintiffs' deception theory held water, however, the ancillary claims would have to be dismissed because they are inadequately or improperly pled and/or simply inappropriate to the fact pattern Plaintiff alleges.

### A.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation.

Plaintiffs' claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiffs allege misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New York, there must be a special relationship of confidence and trust to establish potential liability for negligent misrepresentation.  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated company who personally solicited plaintiffs as investors).  The duty to speak with care arises when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in morals and good conscience the one has a right to rely upon the other for information."  *Id.* at 263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927).  To establish a claim for negligent representation the plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *see also J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007); *Basis Yield Alpha Fund (Master) v. Goldman*

15

*Sachs Grp., Inc.*, 115 A.D.3d 128, 141 (App. Div. 2014) (cause of action dismissed for complaint's lack of allegation of a relationship of trust and confidence between the parties). Negligent misrepresentation claims generally are lodged against individuals with a direct, one-on-one relationship with the plaintiff, especially professionals having special expertise, such as attorneys, accountants and consultants. *Kimmell*, 89 N.Y.2d at 263-64. Applying this theory where Plaintiffs, and the putative class, are members of a mass audience of consumers, with no direct relationship to Michael Foods, is improper, and the claim should be dismissed.

### B. Plaintiffs Fail to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability

As Plaintiffs admit in their pre-motion conference response letter, the claim for express warranty and implied warranty of merchantability "were included in the [second amended complaint] by mistake", as that claim was previously dismissed. (Dkt. 46 at 3-4; Dkt. 35 at 16:17-17:13). These claims in the second amended complaint should be formally dismissed.

### C. Plaintiffs Fail to State a Claim for Unjust Enrichment

As Plaintiffs admit in their pre-motion conference response letter, the claim for express warranty and implied warranty of merchantability "were included in the [second amended complaint] by mistake", as that claim was previously dismissed. (Dkt. 46 at 3-4; Dkt. 35 at 15:14-19). These claims in the second amended complaint should be formally dismissed.

### IV. Plaintiff Lacks Standing to Seek Injunctive Relief

Judge Bianco has already ruled that Plaintiffs in this case have no standing to seek injunctive relief. (Dkt. 35 at 19:2-20:14.) This ruling was consistent with precedent holding that alleged past harm does not confer standing to seek injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "[Past] exposure to illegal conduct does not in itself show a

16

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Numerous District Courts in the Second Circuit have dismissed claims for injunctive relief in false advertising cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by them." *Elkind v. Revlon Consumer Prods. Corp*., No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at \*8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc*., 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc*., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder"). Most recently, this Court dismissed the claim for injunctive relief in another food advertising class action filed by these same plaintiffs' counsel on this ground. *See Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way. He therefore lacks standing to seek an injunction."). This Court should reaffirm Judge Bianco's ruling and dismiss Plaintiffs' claims for injunctive relief.

## CONCLUSION

For the foregoing reasons, Michael Foods respectfully requests that this Court grant its motion to dismiss Plaintiffs' Second Amended Complaint, or alternatively, to dismiss Plaintiffs' nationwide purported class allegations.

Dated: November 13, 2019                                Respectfully submitted,

17

B5027443.4

*/s/ August T. Horvath*
August T. Horvath (AH 8776)
*ahorvath@foleyhoag.com*
Natasha N. Reed (NR 8761)
*nreed@foleyhoag.com*
Ellen Cheong (EC 3339)
*echeong@foleyhoag.com*

FOLEY HOAG LLP
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax (646) 927-5599

*Attorneys for Defendant Michael Foods, Inc.*

18

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 13th day of November 2019, a true and

correct copy of the foregoing document has been served on counsel of record who are deemed to

have consented to electronic service via ECF.

/s/ *August Horvath*
August T. Horvath